UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANTONIO H.,[1]

    **Plaintiff,**

v.

Case No. 3:20-cv-00279
Magistrate Judge Norah McCann King

COMMISSIONER OF SOCIAL SECURITY,[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Antonio H. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 11, *Defendant's Memorandum in Opposition*, ECF No. 14, *Plaintiff's Reply*, ECF No. 15, and the *Certified Administrative Record*, ECF No. 9. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court denies *Plaintiff's Statement of Errors* and affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I.      PROCEDURAL HISTORY

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income on May 22, 2017, alleging that he has been disabled since November 1, 2015, as a result of a number of physical and mental impairments. *See* R. 15.[3] The applications were denied initially and upon reconsideration and Plaintiff sought a *de novo* hearing before an administrative law judge. R. 153-54. Administrative Law Judge ("ALJ") Gregory Kenyon held a hearing on March 21, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. *Id*. In a decision dated May 20, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from November 1, 2015, Plaintiff's alleged disability onset date, through the date of that decision. R. 30. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 8, 2020. R. 1. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 17. The matter is ripe for disposition.

II.     LEGAL STANDARD

A.      Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial

---

[3] References to the Certified Administrative Record, using the pagination of the Certified Administrative Record, will be cited as "R. _."

2

evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§

3

404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 25 years old on his alleged disability onset date. *See* R. 29. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between November 1, 2015, his alleged disability onset date, and the date of the decision. R. 18.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: morbid obesity; gastrointestinal symptoms attributed to Crohn's disease; spinal disorder (degenerative disc disease); degenerative joint disease of the knees; depressive disorder; and anxiety disorder. R. 19.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 22.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to the following additional limitations:

> (1) no more than occasional crouching, crawling, kneeling, or stooping; (2) no more than occasional balancing; (3) no more than occasional climbing of ramps or stairs; (4) no climbing of ladders, ropes, or scaffolds; (5) no work around hazards such as unprotected heights or dangerous machinery; (6) no concentrated exposure to temperature extremes or excess humidity; (7) limited to performing unskilled, simple, repetitive tasks; (8) no more than occasional superficial contact with co-workers and supervisors (with 'superficial' contact defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but lacking the ability to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts); (9) no public contact; (10) no fast-paced production work or jobs involving strict production quotas; (11) limited to performing jobs that involve very little, if any, change in work duties or work routine from one day to the next.

R. 23. The ALJ also found that the Plaintiff had no past relevant work. R. 29.

5

At step five, the ALJ relied on the testimony of the vocational expert to find that a significant number of jobs—*e.g.,* jobs as a printed circuit board screener, a document specialist, and a ticket counter—existed in the national economy and could be performed by Plaintiff. R. 30. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 1, 2015, his alleged disability onset date, through the date of the decision. *Id*.

Plaintiff disagrees with the ALJ's findings at step four and specifically argues that the ALJ erred in failing to accord controlling weight to the opinions of Ogo Nwokoro, M.D., Plaintiff's treating physician. He asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 11; *Plaintiff's Reply Brief*, ECF No. 15. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Memorandum in Opposition,* ECF No. 14.

## IV. RELEVANT EVIDENCE

Plaintiff testified at the administrative hearing that he is unable to work due to complications of Crohn's disease as well as other ailments. R. 46.[4] He testified that, because of his Crohn's disease, he has three bowel movements per day, alternating between constipation and diarrhea, but must use a bathroom five or six times per day, spending between one to two hours in the bathroom each time. R. 46-48, 55. He also experiences pain, cramping, nausea, and

---

[4] Because Plaintiff challenges only the ALJ's evaluation of the evidence relating to Plaintiff's physical impairments, the Court will limit its discussion to that issue.

6

vomiting. R. 48-49. He is prescribed Prednisone for the condition, but it does not help. R. 49. Plaintiff also has back pain, which is aggravated by sitting or standing too long, and for which he undergoes injections every month. R. 50. His right knee is also painful and unstable, and feels like it is "popping in and out of place" while he climbs stairs. R. 51. He can stand for one hour, sit for 30-45 minutes at a time, walk for one hour, and lift five to ten pounds. R. 50, 55. Plaintiff sees Dr. Nwokoro, his primary care physician, at least once per month. R. 57.

The ALJ accurately summarized the medical evidence relating to Plaintiff's physical impairments:

> The claimant has a history of treatment of gastrointestinal symptoms including abdominal pain, alternating constipation and diarrhea, and hematemesis. This condition was treated with medication (Prednisone). In January 2017, the claimant told a health-care provider that he had one daily bowel movement and he denied having any diarrhea. In December 2017, the claimant reported that he was having only two or three bowel movements per day and that his stools were of normal consistency. Abdominal ultrasound was unremarkable. CT scan showed no evidence of acute abdominal or pelvic abnormality. Despite such rather innocuous clinical findings, Dr. Nwokoro diagnosed Crohn's disease without complication. Colonoscopy revealed terminal ileum ulcer and internal hemorrhoids but, otherwise, the symptom pathology was non-specific. Random colon biopsies were normal. In August 2017, the claimant reported that he was doing well and that rectal bleeding was "very minimal." He was experiencing no abdominal pain and no diarrhea. In fact, he was experiencing constipation that was attributed to the use of narcotic pain medication (Vicodin). . . .
>
> The claimant was medically evaluated for complaints of low back pain. MRI scan showed evidence of moderate left neural foraminal narrowing at the L5-S1 level but no significant spinal canal stenosis. Mild lower lumbar spine degenerative change with facet arthropathy and mild L5-S1 intervertebral disc bulge and disc desiccation was diagnosed. Except for the L5-S1 level, the lumbar spine revealed no worse than mild abnormality and no significant stenosis. . . .
>
> X-rays of the knees were normal. However, MRI scan in December 2018 showed evidence of chondromalacia and underlying subchondral edema in the left knee. Evidence of significant degenerative abnormalities of the knees is not particularly strong. X-rays of both knees in December 2018 showed no joint effusion, malalignment, or chondrocalcinosis. Joint spaces were preserved. The x-rays were considered negative. . . .

R. 19-20 (citations to record omitted.).

On July 16, 2017, William Bolz, M.D., reviewed the evidence of record on behalf of the state agency, R. 65-88, and concluded that the record documented the severe impairments of spinal disorder, gastritis, and hypertension. R. 81. Dr. Bolz opined that Plaintiff had the RFC to lift 20 pounds occasionally and ten pounds frequently, to stand/ walk and site for six hours during an eight-hour workday. R. 71. Plaintiff could frequently climb ramps and stairs, balance, kneel, and crouch, and could occasionally stoop and crawl. *Id*. However, Plaintiff could never climb ladders, ropes, or scaffolds. *Id*. Based on his review of the record, Dr. Bolz concluded that Plaintiff had the RFC to perform light work. R. 87. On September 19, 2017, Gail Mutchler, M.D., also reviewed the record on behalf of the state agency, R. 91-128, and agreed with Dr. Bolz that Plaintiff had the RFC to perform light work. R. 126.

In September 2017, Dr. Nwokoro, Plaintiff's treating internist, reported to the Ohio Department of Job and Family Services that Plaintiff had suffered from Crohn's disease and other conditions for "over 4 years." R. 1174. Dr. Nwokoro opined that, based on physical examinations and consultative reports, Plaintiff could stand or walk for a total of two to three hours, for 30 minutes at a time, and could sit for a total of four hours, for 45 minutes at a time, during an eight-hour workday. R. 1175. He could lift or carry 6-10 pounds frequently and 11-20 pounds occasionally. *Id*.

In January 2019, Dr. Nwokoro completed another physical capacity assessment. R. 1650-54. He limited Plaintiff to lifting no more than 15 pounds occasionally and ten pounds frequently. R. 1651. Plaintiff could walk or stand for a total of 90 minutes, for ten minutes at a time, and could sit for a total of two hours, for 15 minutes at a time, during an eight-hour workday. *Id*. Plaintiff's ability to reach, handle, finger, feel, and push or pull were also limited.

8

R. 1652. Specifically, Dr. Nwokoro stated that "reaching" causes exertion of Plaintiff's spine, which leads to acute pain. *Id.* As to Plaintiff's limitations on handling, feeling, and fingering, Dr. Nwokoro cited "suspected bilateral carpal tunnel syndrome." *Id.* Dr. Nwokoro also opined that Plaintiff should avoid heights, moving machinery, chemicals, extreme temperatures, vibration, and humidity, and could never climb, stoop, crouch, kneel, or crawl. R. 1652-53. According to Dr. Nwokoro, Plaintiff could not perform even sedentary work. R. 1653-54.

Rajeev Mehta, M.D., Plaintiff's treating gastroenterologist, reported to the Ohio Department of Job and Family Services a diagnosis of Crohn's disease of the small intestine with rectal bleeding, but he did not offer a functional capacity assessment. R. 1172-73.

## V.     DISCUSSION

Plaintiff argues that the ALJ erred in his evaluation of Dr. Nwokoro's opinions. This Court disagrees.

For claims such as Plaintiff's, *i.e.,* those filed after March 27, 2017,[5] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including,

---

[5] As noted above, Plaintiff filed his applications on May 22, 2017.

9

but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

The applicable regulations emphasize that "the most important factors [that the ALJ and the Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. §§ 404.1520c(c)(1), 416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive he find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b). Specifically, the ALJ must explain how he considered the 'supportability' and 'consistency' factors for every medical source's opinion and ALJ may—but is not required to—explain how he considered the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, "[b]ecause many claims have voluminous case records containing many types of

evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how he considered all of the factors for all of the medical opinions and prior administrative medical findings in [the claimant's] case record." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

The ALJ properly recognized these governing regulations, R. 24, and found Dr. Nwokoro's opinions "neither plausible nor persuasive:"

> In view of the overall evidence of record and the claimant's treatment history, the degree of limitation described by Dr. Nwokoro is found to be neither plausible nor persuasive. Dr. Nwokoro initially indicated that the claimant could function well enough to do sedentary work for about six hours per day. Although his second assessment was more restrictive (indicating that the claimant could not work at all), such conclusions are not warranted for at least two reasons: (1) clinical testing and imaging showed, at worst, only mild-to-moderate abnormality and (2) the level of (conservative) care provided the claimant is not consistent with the level of limitation purported to exist by Dr. Nwokoro. If the claimant were truly restricted to the degree indicated by Dr. Nwokoro, it would be expected that he would be receiving much more intense treatment but such is not the case. Note, for example, that, upon examination in January 2019, no evidence of significant musculoskeletal abnormality was even referenced. It appears that the extent of limitation suggested by Dr. Nwokoro could only have been based on uncritical acceptance of the claimant's subjective pain complaints. Recall that in August 2017, Dr. Nwokoro recommended increased exercise to lose weight. More recently, on December 20, 2018, Dr. Nwokoro reported that there were no complaints of fatigue or weakness. The claimant had not lost any weight. There was no nausea or vomiting. There was no constipation, diarrhea, or abdominal pain. Upon examination on October 27, 2018, the claimant exhibited normal motor function and good range of motion in all major joints with no major deformities of the musculoskeletal system.

R. 26 (citations to record omitted). The ALJ found the opinions of Dr. Bolz and Dr. Mutchler, the reviewing state agency physicians, "not implausible" but "somewhat optimistic":

> … Dr. Bolz and Dr. Mutchler both concluded that the claimant retains the exertional capacity for light work as defined for Social Security purposes. That conclusion is not especially implausible given the objective medical evidence and clinical findings of record which, as set forth above, show, at worst, relatively mild degenerative disc and joint disease. Nonetheless, the claimant's morbid obesity would contribute to his functional limitations and, given his excessive weight, it is found that the claimant could have difficulty with the sustained standing and walking associated with light work. Consequently, the opinion evidence supplied by Dr. Bolz and Dr. Mutchler indicating that the claimant can do light work may be somewhat optimistic. Rather, it is found that

11

> the claimant is limited to performing only sedentary work which, by definition, is generally done in a seated position. It does not involve lifting more than ten pounds. Sedentary work does not require standing or walking more than two hours during any given eight-hour workday. It does not involve any type of strenuous physical activity.

*Id.* (citations to record omitted).

Plaintiff characterizes the ALJ's evaluation of Dr. Nwokoro's opinions as "a mere lay disagreement with the treating medical source in interpreting the medical evidence." *Plaintiff's Statement of Errors*, ECF No. 11, PageID# 3473. This Court disagrees. Consistent with the regulations, the ALJ noted inconsistencies between Dr. Nwokoro's two assessments, including the fact that Dr. Nwokoro had initially opined that Plaintiff could perform sedentary work, but later opined that Plaintiff could not do so. The ALJ also observed that Dr. Nwokoro's opinions were not supported by his own treatment records, which reflect only conservative treatment and which include relatively benign complaints and findings. Finally, the ALJ also properly evaluated Dr. Nwokoro's opinions in light of the evidence of record, noting that imaging and diagnostic testing were not consistent with Dr. Nwokoro's opinion of total disability. This Court concludes that the ALJ's evaluation of Dr. Nwokoro's opinions conformed to the governing standard and enjoys substantial support in the record.

The ALJ found that the opinions of Dr. Bolz and Dr. Mutchler, the state agency reviewing physicians, were "not especially implausible" although they were "somewhat optimistic." R. 26. Rather than adopting these doctors' opinions of a limited range of light work, the ALJ found that Plaintiff had the RFC for a limited range of sedentary work. R. 26. Plaintiff argues that, in doing so, the ALJ "play[ed] doctor and [made] their [sic] own independent medical findings." *Plaintiff's Statement of Errors*, ECF No. 11, PageID# 3474. This Court disagrees.

It is an ALJ's obligation to determine the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). In doing so, the ALJ must evaluate all the medical evidence as well as the claimant's testimony. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004); SSR 96-5p, SSR 96-8p. Thus, an ALJ does not improperly assume the role of a medical expert merely by assessing the medical and non-medical evidence when determining a claimant's RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Moreover, there is no requirement that an ALJ adopt, *verbatim,* a medical expert's opinion as to a claimant's ability to engage in work-related activities. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions *verbatim*; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."). However, the ALJ's RFC determination, like all findings of the ALJ, must be supported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 779 (6th Cir. 2009).

In the case presently before this Court, the ALJ's RFC determination, which was more restrictive than that recommended by the state agency reviewing physicians on whose opinions the ALJ relied, enjoys substantial support in the record and complied with the applicable regulations and standards. Under these circumstances, this Court must defer to that determination, even if there is evidence in the record to support an opposite conclusion. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *see also Emard*, 953 F.3d at 849 (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)).

VI. **CONCLUSION**

For these reasons, the Court **DENIES** *Plaintiff's Statement of Errors*, ECF No. 11, and **AFFIRMS** the Commissioner's decision. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  August 9, 2022                              *s/Norah McCann King*
                                                               NORAH McCANN KING
                                                    UNITED STATES MAGISTRATE JUDGE